Please call the next case. 416-0894, Jo-Ann Stores, Inc. v. Workers' Compensation Comm'n May I proceed? May it please the Court, Miles Kael on behalf of Jo-Ann Stores. This case is before the Court on an appeal from the Illinois Workers' Compensation Commission. The Commission, as a creature of statute, has no inherent powers. Only the powers vested in it by the statute and the obligation to implement the statute as written by the legislature. In this appeal, the respondent argues that the Commission erred in its application of the law in Section 8D.1 of the Workers' Compensation Act. Section 8D.1 has language associated with the necessity for that award is first the showing of the usual and customary line of employment, that the employee has lost that line of employment. The legislature, in the choice of those words, did not use any of the specific language in Section 10 in which it identified the normal work of an employee, the snapshot of an employee's work, a specific type of labor, day, time, even location. Are they required to do that? I think they are required to do that because the legislative intent is that it was a broader scope, a line of employment, not a specific single day of employment. Section 8D.1 also includes the language of interpreting other suitable work, what he is or is capable of earning. So if an employee was a carpenter, the Commission would have to say he sawed boards, he nailed nails, he glued whatever? They'd have to say that? No, the Commission, if he was a carpenter and there was expert testimony that he was physically incapable of returning to a specific type of carpentry, say frame carpentry, and then was limited to a lower wage, that could be his usual type of employment. But workers' compensation, under the scheme of compensation, wage permanent totals are the highest amount of an award in workers' compensation. A wage differential is the second highest award. This court, in the Westin Hotel case, indicated that an employee, to prove a permanent total, a doctor couldn't merely testify the man was permanently disabled. That required testimony of a vocational expert. Similarly, in order to see if someone has lost his usual and customary line of employment, as in this case, this woman who worked in the retail industry, it would have to be vocational testimony that she was precluded from her return to work in the retail industry. No doctor said that. No voc person said that. My vocational expert did indicate that she could return to work at wages, yearly wages of $38,000. When the Supreme Court interpreted the wage differential statute in Kasson's transportation, it denied the respondent's request for periodic reviews and changes of the wage differential. But the Supreme Court used language in Kasson's indicating that it was required of the commission, like a jury or like a judge, to look at the totality of circumstances as to how this impacted the person. A broader view, not a snapshot of the person's single job that they had on one day. A broader view as to how this impacted the person and the whole. The wage differential provisions contain specific language to look for what is the highest and best earnings the person is or should be or is able to. So the legislature, by using that language, did indicate that the party would need to mitigate his damages and look for other suitable work. And evidence, they are implicitly asking for expert testimony as to what other suitable work would be. In this instance, the woman did not return to retail sales, something that she had done for over a period of a decade. She did not look for jobs in retail sales, and she indicated when she filled out her applications, that because she wanted to be home with her kids and have a more set schedule, she wanted to work in an office setting. It was a personal choice in terms of the position that she took and the job she took. Her usual and customary line of employment was the retail industry. Now counsel and Judge Hoffman, I think, was getting to it, is that set in stone? Does someone have to be a carpenter? Does someone have to do this? And it's not set in stone, because the first assist case, the woman was an operating room nurse. And typically, operating room nurses earn $45 per hour, because it was a more specialized, customary line of employment. Why wouldn't that rationale apply here? Are you saying that all retail store manager positions require the same physical capabilities? They're all equal? No, but there was expert testimony in the first case. Two different experts testified to the unique nature of the operating room nurse versus a nurse in a doctor's office. In this case, there was absolutely no vocational testimony on the part of the petitioner. Well, who's Bozen? Julie Bozen is a respondent's expert who indicated that she'd be capable of working at $38,000 per year in retail sales. Okay, she did a labor market survey. Did she not, showing that while some employers in that field could accommodate lifter restrictions of up to 26 to 33 pounds, others require individuals in a store manager position to lift 50 to 75 pounds or up to 100 pounds. Did that come into the record? That came into the record, and there was no indication that this petitioner ever asked for, petitioned for, or pled for vocational rehabilitation in order to test the waters in order to mitigate her damages. I'm often criticized at the commission because I indicate that petitioners have a duty to mitigate their damages. The arbitrators and commissioners tell me it's not written in the statute. Well, it doesn't have to be written in the statute because it goes back beyond the common law. It goes back, the parables in the Bible about the unproductive fruit tree and the king with 10,000 soldiers facing an army of $20,000. Naturally, he would sue for a piece on good terms. Before we get back into the fruit tree, can I ask you this? Sure. We've got the restrictions from Rafe and Watson that's setting the limitations of 20 to 25 pounds and no more than 15 recommended by Dr. Watson. So isn't that to be considered here? That would be considered. In a situation, if a petitioner had either in a wage differential case, should be measured the same way as a permanent total because of the enormity of the recovery, the petitioner should exhaust either through an exhaustive search for jobs in their normal line of work within those restrictions and either show it through that testimony or show it through expert testimony. It wasn't done in this case. So you're saying there's a failure of proof on the claimant's part? Is that what you're saying? Correct. That their customary line of employment, once the commission needs to reach that level, the commission needs to enforce that level regarding the customary line of employment, the entire purpose of that section and the entire purpose of Section 8 in order to require parties to, if they petition for vocation of revocation efforts, this issue might have been decided. I might not be standing here. If either she had exhausted her search or if she had petitioned the commission to force me to pay for her search to prove that she could no longer be in the customary line of employment of retail sales. That wasn't done. She didn't opt to pursue. Are you required under the commission's rules to provide a vocational rehabilitation assessment? There is a report. Once the person is off for more than half a year or they return to, it's indicated that in case of returning to their former job capacity, we are required to fill out a report. I believe, even though it hasn't been reached before, the plain reading of the statute and mandating the commission to apply the language of the statute, which clearly if the legislature had only intended a snapshot of the person's job, they could have indicated the job or earning capacity. The Supreme Court said, a person said that the earning capacity is not just reviewing wages and wages are not necessarily dispositive of the take-home pay. This statute in itself envisions a broader view and a view either requiring expert testimony or requiring specific proof of an effort to return to your former scope of the customary line of employment. Or a wage differential should fail. In a related matter, we also have preserved the issue regarding Dr. Watson and his deposition and his testimony concerning the records and the evidence that he relied upon. Under Section 12 of the Workers' Compensation Act, examining physicians are required to tender their reports and the records they rely upon. Is this the six-inch versus one-inch argument? Correct. If we can have all expert opinions... Your opposing attorney told the arbitrator, I only sent him this much, meaning the inch. Is he lying? No. Obviously, Dr. Watson is lying. No, obviously, Dr. Watson is mistaken. Okay. Expert opinions are only as reliable as the facts upon which they rely. Counsel, it's not your strongest argument. I'd get to something else. Based upon the principles of statutory construction, when absent a showing that she is physically incapable of return to her usual and customary line of employment, a wage differential should not be awarded. Thank you. Thank you, counsel. You have time to reply. I ask that you may respond. May it please the Court, Mr. Cahill. My name is Chuck Edmiston. I represent the claimant, Terry Robbins, in this case. Counsel has argued here in his brief that the 8D1 requires proof that the claimant has lost her usual and customary line of employment or is precluded from her usual and customary line of employment. That's not what 8D1 says. 8D1 says that it must be shown that the claimant is partially incapacitated from pursuing her usual and customary line of employment, partial incapacity, not preclusion. These issues of whether an individual is partially incapacitated from pursuing her usual line of employment or whether her current employment meets the definition of some suitable employment that she's returned to are fact questions, questions of fact that the Commission has resolved in my client's favor. The standard of review here is manifest wage standard and not de novo, as the respondent has suggested. The employer here presented evidence to refute both of those findings, presented medical evidence regarding the extent of the claimant's partial incapacity, presented vocational evidence as to the suitability of the employment she obtained. There's conflicting facts here that the arbitrator and the Commission had to resolve, so these are fact questions and manifest wage is the standard that the Court must apply here. The employer is suggesting a new threshold requirement for establishment of a wage differential here, suggesting that we must present expert testimony that she's incapable of pursuing her usual customary line of work or even partially incapacitated from pursuing that work. There's nothing in the case law that suggests that. The Council cited an AD-1 decision for that proposition. AD-1 is assessing a different issue, whether there's any employment at all available, whether there's any gainful employment readily available for a person in order to establish a non-life permanent home. Was he relying on the Weston case? I don't remember the name of the case. Yeah, Weston. Yeah. In fact, in that case, the Court said that the standard could be met either by expert testimony or by a diligent job search. In this case, the arbitrator relied upon my client's diligent job search to establish that the employment she obtained was suitable employment under the Act. The arbitrator found that my client demonstrated a partial incapacity from pursuing her usual and customary line of employment by the fact that she lost her job. I don't think there's any better proof that she's partially incapacitated than the fact that her employer would not take her back to work at her current employment because of the restrictions that were imposed upon her by her injury. That in itself is proof of partial incapacity from pursuing her usual and customary line of employment. The suggestion that we must present expert testimony, that we must establish that there's no employment within any broad definition of a usual and customary line of employment, I think would frustrate the purposes of the AD-1 provisions for wage differential compensation. The petition made much of the fact, after finding that Bose's opinions were speculative at best, they made much of the fact that the employer made absolutely no effort to assist the petitioner in obtaining any of these jobs that they said were available and that most of which were 90 miles from her home. And they found that the job she did secure on her own was suitable employment and they based the wage differential on that. Were they entitled to rely on the fact that the employer did not assist her in obtaining those positions in making a determination that Bose's opinion was speculative? I think that's a factor they should consider. The employer does have the opportunity to provide vocational rehabilitation assistance when somebody is unable to return to work. In fact, the rules of the law requires that they do an assessment at some point when someone's been off work for a certain period of time has been pointed out. Although in practice, I don't know if I've ever seen that done. I think that rule only has come up when I've been arguing in front of this court. I don't see that ever done. But I think the fact that the respondent did not take that opportunity raises the question as to whether they can be critical of the effort that she made. Even Bose's opinion, I don't think, established that there was employment available, better employment available to her than the job that she accepted because very few of those jobs were actually available to her. Some of them were not available due to her restrictions. Many of them were not hiring. And based on my review of all those jobs, I think there was only one that was available within her geographic area. And I think the arbitrator in commission correctly ruled out the jobs that were more than 90 miles away from her home, and that was too far of a commute to be reasonably available to her. So I think the arbitrator was correct in finding that it was speculative at best that there was other jobs available to her where she could earn more because there was only one job available on this labor market survey that was done four months after she had actually found a job after searching for three and a half months and taking the first job that was offered to her because we don't know that that one job would have hired her in a competitive job market. She could have applied along with 30 other people who have no restrictions and very well may not have gotten that job. So to suggest that job was available to her was speculation. She demonstrated a determined effort to return the work. She did a job search for three and a half months, submitted evidence of the work that she had searched for. She took the job that was available to her. And she did seek jobs outside of the retail sales market because the one job that she had that was in that area she had been barred from because of her restrictions. And I think she presumably assumed that lifting was going to be required in a lot of those jobs, so she's expanding out into other areas looking for some kind of employment that she can return to. The standard, again, is manifest weight here. I think clearly the arbitrator and commission's decision is in the manifest weight of the evidence. It's not clearly erroneous that their findings on these facts are wrong. As far as the objection to Dr. Watson's deposition, I think that was properly overruled and there's no requirement in Section 12 that we or the doctor provide the other side with copies of all the records. And, in fact, in this case we did. Unless there's any questions. Thank you. Counsel, you may reply. Vocational rehabilitation benefits are found in Section 8A of the Act. That is, a respondent can be obligated to offer that. But the petitioner also has an absolute right to petition for that and pay the respondent's expense. Just as the petitioner could petition us for physical therapy or other palliative care in order to get better, she has an absolute right to petition for vocational rehabilitation benefits and exhaust her opportunities and have our expert pay it at our expense in order to rehab her. She didn't do that in this case. Her job search over three and a half months, by my count, was 15 applications on the Internet. Only one of them involved sales in that other month. So they all avoided the retail industry. The Commission found that her travel and travel for 81 miles to some of these jobs was unreasonable. But in her past job history that was put into evidence by the respondent, she had routinely traveled to those same cities that were in Julie Bose's evidence, in Julie Bose's report, as a vocational expert, indicating that she could be returned to the retail industry. We believe that the only expert testimony regarding the rehabilitation testimony, I don't believe there is a proposition that every petitioner is going to have to hire a vocational expert in order to pursue a Section 81 case. But they would need to show, through other testimony, in terms of a valid job search within their usual and customary trade or occupation in order to show they've exhausted that and their physical disability precludes that. Thank you. Thank you, Counsel Bolts, for your arguments in this matter. We'll take another advisement.